Milton **ODENHEIMER** and Sylvia Odenheimer

v.

The **UNITED STATES** of America.

Civ. A. No. 31630.

United States District Court
E. D. Pennsylvania.

May 3, 1965.

Louis Sherman, Philadelphia, Pa., for plaintiffs.

Drew J. T. O'Keefe, U. S. Atty., Isaac S. Garb, Asst. U. S. Atty., Philadelphia, Pa., Louis F. Oberdorfer, Asst. Atty. Gen., C. Moxley Featherston, David A. Wilson, Jr., Patrick H. Butler, Atty.,

Dept. of Justice, Washington, D. C., for defendant.

GRIM, District Judge.

The husband and wife plaintiffs in this case were the officers and owners of a large majority of the shares of Sea Shell Musical Bar, Inc. (Sea Shell), which corporation was the owner of a cabaret in Atlantic City, New Jersey. Plaintiffs have sued to recover certain cabaret taxes assessed against the corporation, but allegedly "illegally, erroneously and involuntarily collected from plaintiffs."

After a non-jury trial the court entered findings of fact and conclusions of law in favor of the defendant. The case is now before the court for consideration of plaintiffs' motions for judgment in their favor or, in the alternative, for a new trial.

Sea Shell failed to pay its cabaret tax due to the United States for the third quarters of the years 1957 and 1958. In the summer of 1958 an agent of the Internal Revenue Service communicated with the officers of Sea Shell in an effort to collect the delinquent cabaret taxes. Having been unsuccessful, the agent informed the officers of the corporation that unless the taxes were paid before Labor Day in 1958, the Internal Revenue Service would take action to enforce its claim for taxes by closing the cabaret before Labor Day. Subsequently, in order to keep the business open over the Labor Day weekend, the plaintiffs endorsed in blank their share certificates in Sea Shell and gave them to the revenue agent as security for the payment of all of the delinquent cabaret taxes. It was the giving of this security to the revenue agent which made it possible for Sea Shell to keep the cabaret open over the 1958 Labor Day weekend, even though the cabaret taxes were still due and owing, and which likewise creates an issue of fact to be decided by this court.

In May of 1959 the plaintiffs sold all their shares in Sea Shell to Associated Realties, Inc. under an agreement of sale which provided that all the debts and obligations of Sea Shell, including the de-

linquent cabaret taxes, should be paid first from the proceeds of the sale and that the balance of the purchase price remaining after the payment of the debts should go to the plaintiffs. Following the provisions of this agreement of sale, Associated Realties, Inc. paid the delinquent cabaret taxes and other debts in full and then paid to plaintiffs the balance of the purchase price for plaintiffs' shares in Sea Shell.

Plaintiffs disagree somewhat with this statement of the facts as to the transfer of their shares in Sea Shell. They contend that under the terms of their agreement with the revenue agent, the shares of stock were to be held as security only to make certain that all the cabaret's net proceeds for the Labor Day weekend would go to the Internal Revenue Service and not as the Revenue Service contends that the shares were deposited to assure the payment of all the delinquent cabaret taxes.

On this disputed question of fact, the testimony of the revenue agent, who participated in making this agreement permitting the cabaret to remain open over Labor Day, is helpful and, in my opinion, decisive. Under direct examination he testified as follows:

"Q. For what purpose, sir, did you receive this stock of the Sea Shell Musical Bar?

A. To guarantee the payment of this tax.

* * * * * *

Q. When you say that the stock was received for payment of the tax, to what tax are you referring, sir?

A. Cabaret tax for the third quarter of 1957 and third quarter of 1958.

The Court: Is that the tax at issue in this case?

* * * That is the tax in issue, right, Your Honor." (N. of T. 54, 55).

In my opinion, this testimony is credible and will be believed. Therefore, it is clear to me that the shares of stock of Sea Shell, which were transferred to

the Revenue Service, were to be and were in fact held as security for the payment of all the cabaret taxes due and not merely to assure payment to the Service of the net proceeds from the cabaret's operations over the Labor Day weekend.

Plaintiffs contend also that their transfer of the Sea Shell shares was invalid and of no effect because allegedly it was the result of illegal threats and coercion by the Internal Revenue Service. This contention also is without merit. The activity asserted as coercion was the statement by the revenue agent that unless the tax was paid promptly the cabaret would be closed by the Internal Revenue Service before the Labor Day weekend. This proposed action may have been rather harsh treatment, but to have done it would not have been a violation of the law. It was not an illegal threat or an illegal act of coercion for the revenue agent to threaten to do what the law gave him a right to do.

It is unnecessary to discuss the other contentions of the parties except to point out in reference to the jurisdictional question raised by the defendant that, since the case involves less than $10,000, this court has jurisdiction under one or the other of the two following sections of 28 U.S.C. § 1346:

"(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

"(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws;

"(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive

department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

See general discussion in First National Bank of Emlenton v. United States, 265 F.2d 297 (3d Cir.1959).